(No. 24487. )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
EVELYN LAWSON CAVENEE *et al.* Appellants.

*Opinion filed February 17, 1938—Rehearing denied April 7, 1938.*

FARTHING, C. J., and ORR, J., dissenting.

ESSINGTON & MCKIBBIN, and POPPENHUSEN, JOHNSTON,
THOMPSON & RAYMOND, (FLOYD E. THOMPSON, THURLOW
G. ESSINGTON, WALTER E. BEEBE, and JOSEPH ROLNICK, of
counsel,) for appellants.

OTTO KERNER, Attorney General, (JAMES G. SKINNER,
and ASHLEY GREENE, of counsel,) for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from an order of the county court of Cook county fixing an inheritance tax upon the transfer of a certain trust estate created by the will of Victor F. Lawson, who died in 1925. Under his will the Merchants' Loan and Trust Company was made trustee with directions to pay the income of the trust here involved to the testator's brother, Iver Norman Lawson, during his life, with power to Iver, to appoint, by will, the beneficiary of the remainder, and in default of said appointment the remainder to pass to his heirs. Iver died without having exercised the power of appointment.

The facts are stipulated and are, in substance, as follows: Following the death of Victor F. Lawson the county court of Cook county fixed the inheritance tax on the life estate given to Iver, and found the value of the remainder of the trust, after such life estate had been deducted, to be $1,707,368.63. The order fixing the tax in 1926 stated that this remainder "is not presently taxable but is taxable in the future according to law." The order noted as to this remainder, "tax postponed." The total inheritance tax assessed in Victor F. Lawson's estate was fixed at the sum of $372,192.70, which the court found to be due as of August 19, 1925, the date of the death of Victor F. Lawson. No appeal was taken from this order and the tax was paid in due course.

Iver Norman Lawson, also a resident of Chicago, died March 31, 1937, and by his will he expressly declined to exercise the power of appointment granted to him by the will of his brother, Victor. He left him surviving appellants Evelyn Lawson Cavenee and Iver Norman Lawson, Jr., his children and only heirs-at-law.

On October 8, 1937, a second inheritance tax appraisement in the estate of Victor F. Lawson was instituted before the county judge of Cook county, who, on October 13,

fixed the value of the remainder after the death of Iver Norman Lawson, at $1,716,794.07 and fixed the transfer or inheritance tax of $136,147.52 against the portion passing to the daughter Evelyn, and a tax of $136,278.33 against that portion passing to the son Iver. On appeal from that order the county court fixed the appraised value of the remainders at $1,692,386.63, and fixed an inheritance or transfer tax against the portion passing to Evelyn at $134,139.49, and against that portion passing to Iver at $134,324.29. This tax was assessed as due and payable as of August 19, 1925, as a result of the death of Victor F. Lawson, deceased. This is the order appealed from.

The grounds of appellants' appeal are, that under the Inheritance Tax act of this State, as it was when Victor F. Lawson died, and when the county court, in 1926, fixed the inheritance tax in the Victor F. Lawson estate, no tax could be assessed and collected in the Victor F. Lawson estate, in respect of the remainders after the life estate of Iver Lawson; that there was no postponement of such a tax; that the judgment of the county court in the first inheritance tax proceeding correctly followed the law and its order then entered is *res judicata* of all inheritance, transfer or succession taxes due by reason of his death. It is also argued that the order of the county court on November 5, 1937, deprived appellants of their constitutional rights.

To determine whether further transfer taxes may be assessed in the estate of Victor F. Lawson, it is necessary to have in mind the provisions of the Inheritance Tax act of this State at the time of his death in 1925. At that time the section of the statute imposing a tax on a transfer of property was section 1. This declared that "A tax is hereby imposed * * * in the following cases:" (Cahill's Stat. 1925, chap. 120, par. 396.) This is the only section, as the law existed at that time, imposing a tax. The only section of the act as it at that time stood, fixing the time when

such taxes are payable, was section 3, which provided that all taxes imposed by the act, "unless otherwise herein provided for," shall be due and payable at the death of the decedent. Section 1, so far as applicable here, is as follows: "A tax shall be and is hereby imposed upon the transfer of any property, real, personal, or mixed, or of any interest therein or income therefrom, in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted, in the following cases: 1. When the transfer is by will or by the intestate laws of this State, from any person dying, seized or possessed of the property while a resident of the State.   * * *   4. Whenever any person, institution or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment, when made, shall be deemed a taxable transfer under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will; and whenever any person or corporation possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a transfer taxable under the provisions of this act shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure."

The Inheritance Tax act, as it stood in 1925, did not purport to impose a tax on all transfers at the death of the person from whom the property sprang. The right to impose inheritance taxes under the statute is to be determined as of the time of the death which effects the transfer of the

property. (*People* v. *Linn,* 357 Ill. 220; *People* v. *Flanagin,* 331 id. 203; *In re Estate of Graves,* 242 id. 212.) At the time of Victor F. Lawson's death the statute, as we have seen, provided no tax in his estate regarding a remainder subject to power of appointment. The tax on the transfer of such remainder was to be assessed in the estate of the donee of the power at the time when the power was to be exercised, whether it was in fact exercised or not. This was the clear holding in the *Linn case.* In 1933 the General Assembly amended subsection 4 of section 1 by repealing the provisions of that subsection relating to the non-exercise of the power of appointment, and appellants say there is, therefore, no authority for the tax here assessed.

The position of the Attorney General is that since our Inheritance Tax act was adopted from the State of New York, judicial constructions placed on the statute by the courts of that State are presumed to have been intended, by the General Assembly of this State, to apply to our act when passed. It is pointed out that in *In re Lansing's Estate,* 182 N. Y. 238, 74 N. E. 882, a similar provision of the New York act calling for assessment of a tax on the non-exercise of a power of appointment was held to be unconstitutional, and that, as that decision came with the adoption of the New York act, subsection 4 of section 1 should not be considered as limiting other language of the Inheritance Tax act authorizing a tax in such a case as that before us, and that it was proper, on non-exercise of the power. of appointment, to fix a tax in a second proceeding in the Victor F. Lawson estate.

The *Lansing case* was decided by the New York Court of Appeals in 1905. Our statute, originally adopted in 1895, was completely revised in 1909. Prior to that revision subsection 4 of section 1 was not in the act. Section 25 was, also, then added. Similar sections had been put into the New York act by amendments in 1897 and 1899, and although it be said that the *Lansing case* held the section

of their act corresponding to subsection 4 of section 1 of our act relating to non-exercise of the power, to be unconstitutional, which is disputed in the briefs, it is clear that when the legislature of this State, some four years later, adopted subsection 4 of section 1, no presumption existed that it adopted with it the decision of the New York court holding a portion of it to be unconstitutional. It will not be presumed that the legislative body would do so futile a thing, so it cannot be said that, at the time subsection 4 of section 1 was adopted in this State, it brought with it the decisions of the New York courts.

In *People* v. *Linn, supra,* this court pointed out that the Inheritance Tax act of New York differs essentially from corresponding provisions of the Illinois act, in effect on August 19, 1925, when Victor F. Lawson died. At that time subsection 4 of section 1 of our act postponed the tax on the transfer of property subject to powers of appointment and in this respect differed materially from the New York act as then in effect. Section 25 of the act, as in effect in 1925, provided that in cases where property is limited in trust or otherwise, dependent upon conditions or contingencies, the tax is to be imposed at the highest rate possible on the happening of any of such contingencies. As was said of section 25 in the *Linn case,* so it may be said in this case, that at the time of the death of the testator, Victor F. Lawson, section 25 of the Inheritance Tax act was limited by subsection 4 of section 1, and accordingly the remainders of the testamentary trust over which powers of appointment existed, were not presently taxable. The language of subsection 4 of section 1 is as plain as could well be desired.

Much argument is indulged in the briefs as to whether Iver Lawson, when he specifically declined to exercise the power, in fact transferred any property, or whether such transfer came from Victor F. Lawson, the original donor of the power. Numerous cases are cited on such points. Interesting as they are, it seems to us unnecessary to extend

this opinion to discuss them, in view of the language of this statute in existence at the time of the death of Victor F. Lawson. As we view the provisions of that statute, it is of no materiality whether the remainders to these appellants were transferred by the will of Victor F. Lawson or whether they were vested or contingent. The question before us is the construction of the statute. Subsection 4 of section 1 makes no reference to the law of descent, or rules of property or the law of wills, but very plainly provides that when the donee of the power shall exercise such power of appointment, derived from any disposition of property, "such appointment, when made, shall be deemed a taxable transfer under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will." Prior to the amendment of 1933 this subsection, as we have seen, contained the same provisions in case of non-exercise of power. The Attorney General does not argue that this is an invalid statute, or that the legislature may not determine what, in its judgment, shall constitute a transfer, and certain it is, regardless of where the title to the remainder lies, there is a certain power of control over the remainder which exists until death of the donee of the power, and, as was said by the Supreme Court of the United States in *Chase National Bank* v. *United States,* 278 U. S. 327, 73 L. ed. 405: "Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power, and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax. * * * The non-exercise of the power may be as much a disposition of the property testamentary in nature as would be its exercise at death." But regardless of what the effect on title to property is,

the act, as we have seen, very clearly declares that the exercise or non-exercise of the power of appointment shall be deemed to be a transfer, and declares that it shall be taxed the same as though the property was owned by the donee of the power and passed to the beneficiary by will. This precludes power in the county court to assess a tax in the estate of Victor F. Lawson, or upon the transfer by his will, since the State may not have tax upon two transfers of the same property in the same instrument.

We are of the opinion that the finding of the county court in the inheritance tax proceedings in the estate of Victor F. Lawson in 1926, effectually disposed of the amount due from the transfers created by his will, and that no more was due under that will, but that the amount next to become due would have been under the power of appointment of Iver Lawson, for the reason that such was then the specific provision of the statute. While the provision assessing an inheritance tax on the non-exercise of a power of appointment was repealed, such repeal did not add to the power of the court to fix an inheritance tax in the Victor F. Lawson estate, but, as no saving clause was added, the repeal took from the State, in cases arising before such repeal, the right to collect a tax in case of non-exercise of a power of appointment. What the effect of such an amendment is or might be in cases arising since such repeal, is not before us, and the question whether such repeal left the transfer of remainders in cases of non-exercise of a power of appointment to be taxed under general provisions of the Inheritance Tax act, is not in this case. We are of the opinion that the only transfer tax that could be assessed under the act as it existed on the date of the death of Victor F. Lawson, as affecting the remainder of the trust created for the benefit of Iver Norman Lawson, was that provided by subsection 4 of section 1 of the act. The legislature having repealed that provision, it

follows that upon the death of Iver Norman Lawson in 1937, without exercising the power of appointment, no statute existed in this State authorizing this tax.

The order of the county court fixing this tax was erroneous, and is reversed.                    *Order reversed.*

FARTHING, C. J., and ORR, J., dissenting.