In re WALKER ESTATE
WALKER BANK & TRUST CO. v. STATE TAX
COMMISSION OF UTAH

No. 6299.   Decided June 25, 1941.   (114 P. 2d 1030.)

*Ingebretsen, Ray, Rawlins & Christensen,* of Salt Lake City, for appellant.

*Garfield O. Anderson* and *Grant A. Brown,* both of Salt Lake City, for respondent.

LARSON, Justice.

On October 11, 1935, Angelena A. Walker, the trustor, created an irrevocable trust, by which agreement certain stocks were transferred to the Walker Bank & Trust Company, as trustee. The income from the trust property was to be paid to the trustor during her lifetime, and upon her death the trust estate was to be divided into three shares, the income from each share to be paid to a named beneficiary during his or her lifetime, and upon the death of each such beneficiary, that share of the corpus is to be paid to certain other designated beneficiaries, the grandchildren of the trustor. The trustee was given control and management of the corpus with the exception of the voting rights in connection with the stocks, which were given to the daughter of the trustor exclusively. In addition to being directed to pay the net income to the trustor for her life the trustee "may also pay to the Trustor such amounts in addition from the corpus, as, in the sole judgment of the Trustee may be reasonably required, especially in an emergency, for her proper support, maintenance, and general welfare."

June 9, 1939, the trustor died and the executor, the trustee, refused to include the trust property in the inheritance tax report and appraisement, claiming the property is not subject to the inheritance tax laws of the State of Utah. The District Court, on petition of the State Tax Commission, held the trust property to be subject to the Utah tax in accordance with Chapter 12, Title 80, R. S. U. 1933. The bank appealed from the district court's order that it file a supplemental inventory of the property so transferred and have the property appraised for tax purposes. The errors assigned are (1) that the trial court erred in overruling appellant's demurrer to the commission's petition; and (2) that the trial court erred in rendering its judgment to the effect that the transfer is taxable under the provisions of Chapter 12, Title 80, R. S. U. 1933, and that the executor file a supplemental inventory and have this property appraised for inheritance tax purposes. The question involved is one of law—whether the property, transferred by decedent by virtue of an irrevocable trust agreement by which the income was retained by the settlor for life, and then the income payable over to other named beneficiaries for life, is subject to taxation under Chapter 12, Title 80, R. S. U. 1933. Section 80-12-3, R. S. U. 1933, reads as follows:

"The value of the gross estate of a decedent shall be determined by including the value at the time of his death of all property, real or personal, within the jurisdiction of this state, and any interest therein, whether tangible or intangible, which shall pass to any person, in trust or otherwise, by testamentary disposition or by law of inheritance or succession of this or any other state or country, or by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after his death."

Appellant relies upon certain federal cases following *May v. Heiner*, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244. These cases have developed what may be called the "federal rule," which denies the imposition of a tax on this type of transfer. The great majority of state

courts hold to the contrary and allow the taxation of such transfers in which the income is reserved to the settlor for life.

Forming the background for this federal rule, the first case in this line of decisions is *Reinecke* v. *Northern Trust Company*, 278 U. S. 339, 49 S. Ct. 123, 124, 73 L. Ed. 410, 66 A. L. R. 397, decided in 1929. It involved seven trusts set up by the decedent. Two were revocable by the settlor alone; the life income of these were reserved to the settlor. The remaining five trusts were revocable only with the consent of the beneficiaries, and the income was not reserved to the settlor. All trusts have been taxed as "transfer[s] * * * intended to take effect in possession * * * at or after * * * death." The two absolutely revocable trusts were held to not be completed transfers until the death of the settlor. The five trusts, revocable only with the consent of the beneficiaries, the income as well as the corpus being transferred, were held to have passed from the control of the settlor for all practical purposes at the moment of their creation and did not come within the meaning of the statute. There being no reservation of the income, the settlor had parted with the possession and his entire beneficial interest in the property when the trusts were created.

The question of the taxability under the federal laws of a vested remainder with a life estate reserved to the settlor was first raised in *May* v. *Heiner*, supra. There the decedent had created an irrevocable trust reserving the income to her husband; and upon his death, to herself; the remainder to their children. It is not shown whether the husband predeceased the settlor. It was held that this trust was not "intended to take effect in possession or enjoyment at or after death." [281 U. S. 238, 50 S. Ct. 287, 74 L. Ed. 826, 67 A. L. R. 1244.] Some federal per curiam opinions followed this decision and reached conclusions contrary to the holdings of the state courts. Then Congress amended the section in dispute, 302(c) of the 1926 Act, 26 U. S. C. A. Int. Rev. Acts, page 227, to have it expressly include all

transfers in which the decedent reserves a life interest
or the right to designate the life beneficiary. The
Reinecke case, supra, is distinguishable from the present
situation in that where the trust is revocable it is conceded
to be taxable upon the death of the trustor; as to the five
trusts the case is distinguishable in that the settlor had
actually parted with all interest in the property. Life in-
terests in the income were created, but not for the donor.
Nothing was reserved for the settlor's use or benefit during
his life. The five gifts were instantly complete, inter vivos,
since nothing of value was to pass from the donor or for
the enjoyment of the donees at or after the death of the
donor. The reason there was no transfer subject to the
federal tax was stated as follows:

> "In its plan and scope the tax is one imposed on transfers at death
> or made in contemplation of death and is measured by the value at
> death of the interest which is transferred. * * * It is not a
> gift tax * * *. One may freely give his property to another by
> absolute gift without subjecting himself or his estate to a tax, but
> we are asked to say that this statute means that he may not make
> a gift inter vivos, equally absolute and complete, without subjecting
> it to a tax if the gift takes the form of a life estate in one [other
> than the donor] with remainder over to another at or after the
> donor's death. It would require plain and compelling language to
> justify so incongruous a result and we think it is wanting in the
> present statute."

The above quotation was given in the May v. Heiner case
in justification of the result there reached, although the
cases are distinguishable on the facts. In the May v. Heiner
case the donor reserved a substantial benefit which would
not cease until her death, while in the Reinecke case, as
to the "five trusts" nothing remained with the donor, and
his death merely marked a change in the gifts just as any
other event could serve as an indicator, but the gifts were
previously completed. In May v. Heiner had the donor sur-
vived her husband, a different conclusion might have been
reached by the United States Supreme Court. As it was,
since there was doubt as to the construction of the taxing

statute, to be resolved in favor of the taxpayer, the court held that there was no taxable transfer. By amending the section in question by the addition that expressly names the situation, Congress was making explicit what was formerly covered impliedly, so showing very probably that the Supreme Court had not interpreted the previous statute as intended by Congress.

The great majority of the state courts holds transfers as the one here involved to be taxable, under statutes similar to the one in effect in Utah. *In re Hubbs*, 41 Ariz. 466, 19 P. 2d 672; *Kelly* v. *Woolsey*, 177 Cal. 325, 170 P. 837; *In re Brix's Estate*, 181 Cal. 667, 186 P. 135; *Blodgett* v. *Guaranty Trust Company of New York*, 114 Conn. 207, 158 A. 245; *Russell* v. *Cogswell*, 151 Kan. 14, 98 P. 2d 179; *In re Estate of Rising*, 186 Minn. 56, 242 N. W. 459; *In re Estate of Marshall*, 179 Minn. 233, 228 N. W. 920; 49 A. L. R. 878; 67 A. L. R. 1250.

In the Rising case, supra, the donor absolutely transferred property to trustees, the income to be payable to the donor during her lifetime; upon her death part of the income was to be paid to one of her daughters during the latter's life and upon her death the corpus of this part of the trust property, as well as a second part of the corpus, was to be given to the donor's other daughter. The statute, Section 2292, Mason's Minn. St. 1927, imposed a tax upon

"Any transfer of property * * * (3) When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."

The court held this transfer taxable, saying [186 Minn. 56, 242 N. W. 460]:

"Gifts inter vivos, absolute except for the reservation of income to the donor for life, are expressly reached by the statute. * * * The donor's purpose was, while transferring title to others, to postpone their beneficial enjoyment until her death. A succession tax

would miss many a fair and open target were it not well sighted directly upon all transfers which can be resorted to in lieu of testamentary disposition; or at least upon those plainly so motivated. * * * The purpose was to prevent tax evasion by gifts, absolute except for reservations of income and/or possession to the donor for life. Both purpose and the manner of accomplishment characterize many such statutes.

*       *       *

"In the passing of title by descent, the occasion is the death of the ancestor. If by gift, where the donor makes his death both condition on and occasion for his donee coming into possession and enjoyment, death plays for practical purposes about the same part in the one case as in the other. In the one the law but makes it the effective thing for completing title that the donor makes its the other. Where a trustee intervenes, and income (ordinarily the principal desideratum) is reserved to the donor for life, the donee succeeds to the real substance and value only upon, and by reason of, the death of the donor.

*       *       *

"But, be it always remembered, 'the interest of the party in remainder in chattels is precarious, because another has an interest in possession; and chattels by their very nature are exposed to abuse, loss, and destruction.' [Kent's Com. (12 Ed.)] 354. That risk, emphasized by periods of panic and depression, is another cogent factor showing how much the real succession to chattels is postponed to the death of the donor who has reserved the income for his life. There is always a very real risk that there will remain little or nothing to which the donee can succeed."

As to whether the Utah tax is an "inheritance tax" or an "estate tax" has been definitely settled by the case of *State Tax Commission* v. *Backman*, 88 Utah 424, 55 P. 2d 171. This court held our tax to be an estate tax rather than one on the right to inherit. The distinction between the two lies in the fact that in the estate tax the transfer of the property from the decedent is taxable, whereas in the inheritance tax it is the receipt of the property by the beneficiaries that is taxable. In many situations, as in the present one, the distinction is not apparent. Did the beneficiaries of the life interest in the income receive anything until the death of the decedent?

At the time the trust agreement was made these beneficiaries may be said to have received a life interest in income after another life interest. But the possession and enjoyment was postponed until after the death of the donor. Should they have predeceased the donor they would have received nothing. This is clearly a transfer that is testamentary in nature and covered by the statute. The donor retained the possession and enjoyment of the property and it left her only upon death. Had the property become worthless the beneficiaries would receive nothing. In fact the ultimate beneficiaries of the income itself could not be determined with certainty until after the death of the settlor. The taxability of a transfer does not depend upon the form in which the transfer is made but rather upon the realty behind the form.

In *Worcester County National Bank* v. *Commissioner of Corporations & Taxation*, 275 Mass. 216, 175 N. E. 726, 728, in which a husband placed securities in trust, in accordance with an antenuptial contract, reserving to himself the income for life, after which the principal was to be paid to his wife, it was held that the transfer of the principal was taxable on his death as a transfer "by deed, grant or gift, except in cases of a bona fide purchase for full consideration in money or money's worth * * * made or intended to take effect in possession or enjoyment after his death." G. L. Mass. c. 65, Sec. 1, as amended by St. 1926, c. 148, Section 1. The Massachusetts court said:

"Though upon the creation of the trust an equitable remainder in the trust fund, after the life estate of the decedent in such fund, vested in interest in the beneficiary, she was not entitled to 'possession or enjoyment' of the fund or any part of it until the death of the decedent. The 'deed, grant or gift' was 'intended to take effect in possession or enjoyment after his death.' Her present right to the future 'possession or enjoyment' of the trust fund, which was 'vested' in the sense of being assignable and transmissible by her during the life of the decedent * * * was not 'possession or enjoyment,' within the meaning of the statute. The statute recognizes the familiar distinction between taking effect in possession or enjoyment and vesting in right, title, or interest. * * * Apparent-

ly the Legislature intended to reach for the purpose of taxation the shifting of the enjoyment of property—the 'economic benefits' thereof or 'economic interest' therein  *  *  *  from a former owner at his death, even though such shifting of enjoyment followed necessarily from a prior transfer of title inter vivos."

And in *People* v. *Moses*, 363 Ill. 423, 2 N. E. 2d 724, 726, involving a transfer in trust to the donor's husband as trustee, the trustee was authorized to pay amounts from the income to the donor, as well as part of the principal, according to the trustee's discretion. The Illinois court held the transfer to be taxable as intended to take effect in possession or enjoyment at or after death of the donor. The court said:

"If by a particular transfer the donor retains the fruits of the property during his life, the transfer is in lieu of a testamentary disposition and subject to the tax, but it is otherwise where the donor by the bona fide terms of his act is immediately and absolutely divested of all enjoyment of the property. In our opinion that which determines whether the property transferred is subject to the tax is the substance and contemplated effect and purpose of the transaction and not its technical form. It is the aspect from the donor's part in the transaction which would seem to be of controlling importance in determining whether a particular gift inter vivos, which is not the ordinary absolute gift in praesenti, a transfer in lieu of a testamentary disposition. The donor, here, by making any provision at all for her support out of the trust property negatived the idea of an intended absolute gift without any reservation of enjoyment from it during her life."

The retention of the income from property during life is persuasive that the donor did not intend the transfer to take effect until he or she can no longer enjoy the property. The test is: Who gets the possession or enjoyment of the funds? If the beneficial interest is reserved by the donor the transfer is taxable under the Utah statutes. To avoid having a transfer occur at the death of the donor the transfer inter vivos must be one that actually parts with the title, possession, and enjoyment of the property during the donor's lifetime. The record is

conclusive that the beneficial enjoyment of the property did not pass from the donor during her lifetime. It follows that the judgment should be affirmed. Such is the order.

McDONOUGH and PRATT, JJ., concur.

MOFFAT, C. J., disents.

WOLFE, J., being disqualified, did not participate herein.